Alexander C. Parlini v. Commissioner.
Parlini v. Commissioner
Docket No. 8953.
United States Tax Court
1947 Tax Ct. Memo LEXIS 210; 6 T.C.M. (CCH) 501; T.C.M. (RIA) 47125; May 9, 1947
*210 Ferdinand Tannenbaum, Esq., 20 Exchange Pl., New York 5, N. Y., and Z. N. Diamond, Esq., for the petitioner. Thomas R. Wickersham, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined a deficiency in the petitioner's income tax for 1943 in the amount of $6,257.67. The sole question for determination is whether the Commissioner erred in taxing to the petitioner all of the 1943 income of an unincorporated business, known as Empire State Laboratories, or whether he should have recognized a family partnership in which petitioner claimed that his wife had a one-half interest. Findings of Fact Petitioner is an individual residing in Freeport, Long Island, New York, and filed his income tax return for the year 1943 with the collector of internal revenue for the second district of New York. Grace A. Parlini is his wife, to whom he was married in 1928. Petitioner is a mechanical engineer and has made his living as such. Prior to 1930 he worked for others, but in that year he formed a partnership with a man named Waldo, also a mechanical engineer, under the firm name of Empire State Laboratories, and their *211 business was designing and building special machines. In 1932 petitioner bought Waldo's interest and later that year formed a new partnership with another mechanical engineer named Emil Richter, and the business was continued under the same firm name. In 1933 petitioner bought out Richter and thereafter operated the business of Empire State Laboratories as sole proprietor until April 20, 1943, on which date he executed a bill of sale (no consideration recited or shown) wherein he purports to "give, grant and convey unto" his wife a one-half interest in the assets of Empire State Laboratories, and also the sum of $1,500 in cash. Attached to the bill of sale and made a part of it was an itemized list of the articles of machinery, tools and equipment belonging to the business, the aggregate value of same being $10,557. Also attached thereto was a list of "accounts receivable" of the business, aggregating $24,677.83, all of same owed by only three corporations, to-wit: Kolleman Instrument Company, Bell Telephone Laboratories and the Insel Company. On April 20, 1943, petitioner and his wife executed an instrument designated "Articles of Partnership", purporting to create for a period *212 of five years a partnership under the name Empire State Laboratories (hereinafter called E.S.L.). Petitioner and his wife were to share equally in the profits and losses of the business, except that petitioner was entitled to withdraw from the business $100 per week and his wife $73.50 per week. The capital stated therein was $3,000, together with the machinery, fixtures and accounts receivable recited therein as then equally owned. Petitioner's wife had no separate property and contributed no capital to the business except such as was given her by petitioner. Petitioner's wife had assisted him some in the business, her services being largely clerical, since 1933, without compensation, and beginning in March, 1942, she was paid a weekly salary of $73.50, the nature and extent of her services being the same as theretofore. After April 20, 1943, she continued to draw the same amount, not as an employee but under the partnership agreement. The nature of the business and the number of employees of E.S.L. remained the same after April 20, 1943, and the services rendered by his wife after that date were the same as before. There were 18 employees, one in the office and 17 in the shop, *213 the latter including a shop foreman and mechanical designer. There was no solicitation of business. During 1943 and thereafter E.S.L. had approximately seven customers, the two for which the most work was done were Bell Laboratories and Kolleman Instrument Company. For these large corporations E.S.L. built or constructed models of different types of special or newly designed machinery or mechanical equipment from blueprints supplied by these two corporations. These corporations had their own laboratories and E.S.L. was "sort of sub-contractor for them." In 1943, due to the war, Kolleman Instrument Company and Bell Laboratories needed instruments for testing purposes. Sometimes one model would suffice and again ten units of the same model were required. These larger customers had been patrons of E.S.L. "not too much before 1943". Before the war E.S.L. had other customers for small jobs. After the entry of the U.S. in the war (December, 1941) the number of customers was fewer than before but the business of E.S.L. was larger and its profits were increased. Petitioner had no other business save E.S.L. and gave all of his time thereto. As stipulated in the partnership agreement, he *214 did have "the actual management of the business", and was qualified by training and experience, while his wife was not. Under the partnership agreement, petitioner's wife was to have charge of the office, keep the books, have charge of financial details, including the receiving and collecting of all moneys due and the payment of money due to others. Petitioner's wife was not a mechanical engineer and had only a high school education, and knew nothing about machinery. She had never taken a course in bookkeeping or studied accounting. The only business experience she had before working for E.S.L. was doing clerical work for two other firms. During 1943 petitioner's wife went to the office of E.S.L. two to five days a week, averaging four days a week, and after April 20, 1943, she spent about the same time at the plant as before. She did some work for E.S.L. at home. She was a housewife with three children and had no regular maid in 1943, but her mother lived with her. Funds drawn from the business after April 20, 1943, other than $73.50 weekly paid to petitioner's wife and $100 weekly paid to petitioner (as stipulated in partnership agreement) were deposited to the joint savings *215 account of petitioner and his wife. All household expenses of petitioner and his wife, after April 20, 1943, were paid from the business as theretofore. The partnership return for 1943 showed a net income of $30,161.48, with the distribution of $15,570.99 to petitioner and $14,590.49 to petitioner's wife. In readjusting distribution of income shown on the partnership income tax return for 1943, respondent allowed a salary credit of $2,734.20 to petitioner's wife, same being computed at the rate of $73.50 a week from April 20, 1943, to December 31, 1943. The record consists of oral testimony and exhibits. Opinion Since the decision of the Supreme Court in , and , and cases based thereon subsequently decided by this Court, including the recent one of , it is now the law that before partnership between husband and wife will be recognized for federal income tax purposes when the bona fides of same is challenged by the Commissioner's determination, petitioner must prove that the wife either contributed thereto capital originating with her, or *216 that she substantially contributed to the control and management of the business or otherwise performed services of a vital nature. This the petitioner in the pending case has failed to do. It is admitted that the wife contributed no capital originating with her to the alleged partnership. By documentary evidence consisting of a bill of sale from petitioner to his wife, conveying one-half interest in the business, and articles of partnership signed by him and his wife, together with a certificate of partnership filed in the County Clerk's office of the County of New York as required by the laws of the State of New York, it was thus shown that legal formalities were taken toward the formation of a partnership, but for federal income tax purposes this was not sufficient. * * * By the simple expedient of drawing up papers, single tax earnings cannot be divided into two tax units and surtaxes cannot be thus avoided. [] * * * the transferor may remain liable for tax on income even though title to the property from which it has been derived or to the income itself has "vested" in another under state law. Lucas v. Earl, supra [281 U.S. *217 111]; * * * [. Petitioner sought by oral testimony to meet the requirement as to his wife's contribution of vital services, but the only evidence offered by him upon this material and determinative issue was the testimony of his wife. Petitioner himself, although personally present throughout the hearing and represented by able counsel, did not testify on this issue, although the facts concerning it were obviously within his knowledge; neither did any of his employees or other person testify thereon. While the uncorroborated testimony of a single witness may suffice to prove an issue, in this case the testimony of petitioner's wife, when taken and considered as a whole, is not convincing that her services to the alleged partnership were of that vital nature to the business justifying recognition for income tax purposes. According to her testimony, she had assisted her husband in the business since 1933, doing largely clerical and office work, including control of the bank books, and going to the office from two to five days a week. She kept house for her husband, children and mother, who lived with them, and kept no maid or servant. She *218 consulted with her husband about the business, especially when she was to give a check for any sizable amount, and claimed that her husband sometimes consulted with her about the purchase of machinery. Prior to March, 1942, she received no compensation, but after that date she was paid $73.50 a week as salary for her services. After April 20, 1943, the date of the aleged partnership, she continued to receive $73.50 per week, but claimed that such payments subsequent to April 20, 1943, were advance payments chargeable to her onehalf interest in the profits of the business, which payments were made in accordance with the partnership agreement. She testified that after April 20, 1943, she continued to do the same work and devoted the same amount of time to the business as theretofore, except that she did some work for the business at home and assumed "many more responsibilities". Concerning these new responsibilities, she testified in generalities only, saying that she hired and fired employees, conferred with customers on non-technical matters, took orders for new business, reprimanded employees when she thought necessary, conferred more often with her husband about the business *219 and installed an improved time-keeping system, etc. On cross examination she conceded that she was not a mechanical engineer, having only a high school education and knowing nothing about machinery. She could not cite a single specific example of having conferred with customers on non-technical matters or the name of a single customer whose order she ever took, nor could she cite a specific example of hiring or firing an employee or even reprimanding one. Neither could she remember the name of the single office employee in 1943, except that she was a young lady, although petitioner's wife claimed to be in charge of the office at that time. On direct examination she testified that after the partnership, she gave more time to the business than her husband, but on cross examination she admitted that her husband gave all of his time to the business while she did not. She had her household duties and only went to the plant two to five times a week. She also admitted that her husband was the directing genius in the management and operation of the business, and that he saw that the work was properly performed. Her testimony was neither consistent nor convincing. Conceding, however, that *220 it was accurate, the nature of the business here involved was such that it is doubtful whether services she claimed to have rendered could be regarded as vital thereto. The business was one requiring technical knowledge and skill - the building or construction of models of inventions and of specially designed machinery for which petitioner was qualified and his wife was not. No salesmanship or solicitation was involved, but purely that of manufacturing, and in 1943 the business had but seven customers, two of them large concerns for which the great bulk of the business was done. The coming of the war had reduced the number of customers, but increased the volume of work and profits. Such a business required a minimum of bookkeeping or clerical work, but a maximum of technical work in the shop. Petitioner's wife admittedly knew very little about bookkeeping or accounting and she refers to her work in this regard as "keeping the accounts". None of the books or accounts of the business were offered or exhibited in evidence, but they must have been rather crudely kept, since in her explanation as to what entries had been made in recording the partnership she stated that she drew a line *221 in the book and made a notation that the individual relationship ended and the partnership had begun, and put on a new page under the heading of "Partnership". It was orally stipulated that the books revealed no capital account of either petitioner or his wife. We think the evidence warrants the conclusion that the services of petitioner's wife were of minor or negligible importance to the business, and that the weekly payment of $73.50 which she received, both before and after the alleged partnership (and which Commissioner allowed her in his determination) was adequate compensation. The business was essentially that of the petitioner and the earnings were mainly due to his technical knowledge, skill, personal services and management. For cases where there is a similarity in the facts and the same conclusion was reached by this Court, see , aff'd (C.C.A. 5th Cir. 1945), , cert. denied ; . Decision will be entered for respondent.